UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
Civil Action No: 3:17-CV-278-DJH
**(Electronically filed)**

**LOUISVILLE INDUSTRIAL PARK, LLC**                                    **PLAINTIFF**
A Kentucky Limited Liability Company


**v.**                                         **VERIFIED COMPLAINT**



**EXXONMOBIL OIL CORPORATION**                                    **DEFENDANTS**
A foreign corporation
**Serve:** The Prentice-Hall Corporation System
421 W. Main Street
Frankfort, KY 40601

and

**FIRST CAPITAL BANK OF KENTUCKY**
A Kentucky Corporation
**Serve:** Reid Weitkamp Schell & Vice, PLLC
500 W. Jefferson Street, Suite 2400
Louisville, KY 40202-2812

**FCBKY HOLDING, LLC**
A Kentucky Limited Liability Company
**Serve:** SKO-Louisville Services, LLC
2000 PNC Plaza
500 W. Jefferson Street
Louisville, KY 40202-2828

## I. THE PARTIES

Plaintiff, Louisville Industrial Park, LLC ("LIP") is the current owner of property located at 1391 Dixie Highway, Louisville, KY 40210 the (the "Property"). Defendant, ExxonMobil Oil Corporation ("Exxon") is the successor to the Virginia Carolina Chemical Corporation which was a former owner and operator of the Property. First Capital Bank of Kentucky ("First Capital") has the mortgage on the Property. FCBKY Holdings, LLC ("FCBKY") bought the delinquent tax lien from Nebraska Alliance Realty Company and has moved the Jefferson County Circuit Court Commissioner to conduct a sale of Plaintiff's Property on May 12, 2017.

1

## II. JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction under 28 U.S.C. Section 1331 because this action raises federal questions.

2.  This Court has jurisdiction over Plaintiff's State Law Claims because the State Law Claims are so related to the Federal Claims that they form part of the same case or controversy for Article III purpose under 28 U.S.C. Section 1367.

3.  Venue is proper in this district under 28 U.S.C. Section 1391 because a substantial part of the events or omission giving rise to the claims took place in this district and because Plaintiff and some of the defendants reside in this district.

4.  Declaratory Relief is authorized by 28 U.S.C. Sections 2201 and 2202. A declaration of the Law is necessary and appropriate to determine the parties' respective rights and duties.

## III. NATURE OF THE ACTION

5.  The Property located at 1391 Dixie Highway, Louisville, KY 40210 is in the Park Hill Neighborhood and bordered by densely populated residential area to the north, including a licensed daycare facility.

6.  In 1999 Louisville Industrial Park purchased the Property which contained several dilapidated buildings for approximately $1,900,000.00.

7.  On July 25, 2011 KYDEP Superfund Branch requested that EPA Region 4 evaluate the Site for purposes of conducting a time-critical removal action. EPA reviewed the sampling data and revealed elevated pesticide and arsenic levels at or near the surface with the potential for offsite migration. The contamination on this Site includes hazardous "substances" as defined by Section 101(14) of CERCLA, 42 U.S.C. Section 9601(14).

8.  Defendant ExxonMobil Corporation is a successor company to Tobacco By-Products and Chemical Corporation and Virginia Carolina Chemical Corporation and is a previous "owner" and operator of the facilities at the time of disposal of hazardous substances at the facilities on the Property as defined by Section 101(20) of CERCLA, 42 U.S.C. Section 9601(20) and within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. Section 9607(a)(1).

9.  Plaintiff has been damaged by Defendant ExxonMobil Corporation and its predecessors and is a responsible party under Section 107(a) of CERCLA, 42 U.S.C. Section 9607(a) and is jointly and severally liable for the performance of response action and for the response costs to be incurred at the Site.

10. This is a Civil action arising from environmental contamination caused by Defendant ExxonMobil and by which Plaintiff seeks cost recovery and declaratory judgment under Sections 107(a) and 113(g)(2) of the Federal Comprehensive Environmental Response, Compensation and Liability Act, as amended 42 U.S.C. sections 9601-9675("CERCLA") and for injunctive relief, compensatory and punitive damages under Kentucky Law.

11. This is also an action under Kentucky Nuisance Laws for damages caused by the environmental contamination.

12. The action also avers that the other Defendants be held responsible for the remediation of the Property if the Property is sold at a Commissioner's Sale and be liable for damages for intentional interference with prospective business opportunity.

13. Notice of this action is being provided to the Administrator of The Environmental Protection Agency and The United States Attorney General, pursuant to 42 U.S.C. Section 9613(1).

### IV. FACTS

14. In 2011 the United Stated Environmental Protection Agency ("EPA") designated the Property as the Black Leaf Chemical Superfund Site identified with the following designation:

> Superfund Site ID B4L7, CERCLIS #KYD980559520("The Black Leaf Site") as more specifically defined below. EPA notified a number of parties, including ExxonMobil that it may be a responsible party for the investigation and cleanup of the Black Leaf Site.

15. On October 2013, the Kentucky Department of Environmental Protection ("KYDEP") ordered ExxonMobil to submit a work plan to investigate and characterize any environmental impacts to have been caused by its ownership and operations.

16. Plaintiff purchased the Property in 1999 prior to the notification by the EPA of environmental damage to the Property and performed appropriate inquiry prior to purchasing the Property making Plaintiff an "innocent purchaser" of the Property and not

responsible for any cleanup of the site. At the time Plaintiff purchased the Property it did not know and had no reason to know that hazardous substances were released on the Property. Plaintiff undertook all appropriate inquiry including the hiring of an environmental impact study prior to purchase. 40 CFR PART 312. Plaintiff performed the remediation required in the Phase I Report.

17. Defendant FCBKY to the best knowledge and belief of Plaintiff, purchased the delinquent tax lien with the knowledge that the Property was contaminated and therefore cannot be classified under any lender exclusion KRS 224.01-400(26). Additionally, Defendant First Capital Bank of Kentucky as the mortgagee on the Property participated in the management of the property inasmuch as it controlled the disposition of the property by refraining from any foreclosure in order that Plaintiff and Defendant ExxonMobil would enter an agreement whereby Defendant, ExxonMobil would remediate the Property and satisfy the mortgage of Defendant, First Capital Bank of Kentucky.

18. First Capital also maintained the Property making it a responsible party.

19. LIP has claimed that ExxonMobil is liable to LIP for damages and losses associated with the Black Leaf Site and owes a legal defense and indemnity for liability that LIP may have for third party claims and damages alleged in connection with the Potential Claims and Lawsuits.

20. LIP had planned to develop the property for low income housing and a mixed development and had the support of the City of Louisville and the Housing Partnership, Inc. ("HPI") which creates, sustains and promotes access to affordable housing opportunities in Louisville, KY. LIP and HPI had an agreement that LIP would develop single family and mutli-family homes in the Russell Neighborhood and based upon the analysis and agreement of HPI, LIP would have profits of approximately $20,000,000.00.

21. On or about March 8, 2010 a meeting was held at the offices of HPI to discuss the LIP site. It was communicated that LIP was working with HPI to facilitate residential redevelopment of the property. At that time it was learned that the Kentucky Division of Waste Management-Superfund Branch stated that the Site was previously placed on the CERCLIS NFRAP list by the US EPA. It was also discussed that in cleanup for residential uses would require more stringent cleanup than commercial or industrial sites.

22. Over the next seven years LIP and ExxonMobil worked together to determine the damages that LIP sustained as well as the remediation of the property so that the residential development would occur.

23. There is presently scheduled a Commissioner's sale of the Property set for May 12, 2017 despite the order of sale being held in abeyance since September 14, 2014 at the request of The Kentucky Division of Waste Management.

## COUNT I

## CONTINUING PUBLIC NUISANCE AGAINST EXXONMOBIL

24. Plaintiff re-alleges and incorporates all of the allegations contained in Paragraphs 1 – 23 as is fully set forth herein.

25. The result of the contamination of Plaintiff's property by the Defendant ExxonMobil, Plaintiff has incurred costs and damages that are separate and distinct from injuries suffered by the public.

26. The contamination of the Property at the Black Leaf Site in Western Louisville has caused the Property to be in an extreme state of disrepair.

27. There are residents adjacent to the Property in Louisville's Park Hill Neighborhood and some of the structures are so dilapidated that portions of the buildings have entered other people's property in the neighborhood.

28. ExxonMobil has refused to remediate the site and has caused a public nuisance causing property values to decline and causing a blight and public nuisance in the city.

29. Plaintiff has special and unique damages to itself inasmuch as the Property it purchased in 1999 for approximately $2,000,000.00 has been rendered worthless and has caused additional damages to Plaintiff for the past seventeen years.

## COUNT II

## DECLARATORY JUDGMENT THAT EXXONMOBIL IS RESPONSIBLE FOR REMEDIATION OF THE SITE

30. Plaintiff re-alleges and incorporates all of the allegations contained in Paragraphs 1 – 29 as is fully set forth herein.

31. Defendant ExxonMobil is a person within the meaning Section 101(21) of CERCLA, 42 U.S.C Section 9601(21).

32. Upon information and belief Defendant ExxonMobil is a covered person within the meaning of one or more of Sections 107(a)(1), (2), (3) or (4) of CERCLA, 42 U.S.C Section 9607(a)(1)(2). Plaintiff brings this declaratory relief claim pursuant Section 107 and 113 of CERCLA, 42 U.S.C Sections 9607(a), 9613(g)(2) and Declaratory Judgment Act 28 U.S.C Sections 2201 and 2202.

33. An actual and substantial controversy has arisen between Plaintiff and Defendant regarding their respective rights and obligations for response costs that need to be incurred to respond to release of contaminates from the source property facilities pursuant to 42 USC Section 9613(g)(2) and 28 USC Sections 2201 and 2202. Plaintiff seeks and is entitled to a Declaratory Judgment that Defendant ExxonMobil is liable to Plaintiff for future response costs and a Declaratory Judgment that ExxonMobil must undertake removal and payment of response costs to take remedial actions at the Site so that it is suitable for residential redevelopment.

## COUNT III

## DECLARATORY JUDGMENT THAT FIRST CAPITAL BANK OF KENTUCKY AND FCBKY ARE RESPONSIBLE FOR REMEDIATION OF THE SITE

34. Plaintiff re-alleges and incorporates all of the allegations contained in Paragraphs 1 – 33 as is fully set forth herein.

35. A Declaratory Judgment that Defendant's First Capital Bank of Kentucky and/or FCBKy if one or the other purchase the Property at a Commissioners Sale that the purchaser is obligated to remediate the site to make it eligible for housing redevelopment and damages to Plaintiff.

## COUNT IV

## PERMANENT NUISANCE KRS 411.530

36. Plaintiff re-alleges and incorporates all of the allegations contained in Paragraphs 1 – 35 as is fully set forth herein.

37. Plaintiff brings this private nuisance claim against ExxonMobil pursuant to KRS 441.530. The contamination of the ground on the Property is a permanent nuisance that can't be corrected or abated at reasonable expense to Plaintiff and the permanent nuisance is relatively enduring and not likely to be abated voluntarily or by court order.

38. The permanent nuisance exists since the Defendant ExxonMobil use of the Property caused unreasonable and substantial annoyance to the occupant of the Property or the Defendant ExxonMobil unreasonably interferes with the use and enjoyment of such Property and thereby causes the fair market value of Plaintiff's Property to be materially reduced.

39. The Plaintiff is a claimant under KRS 411.500 et seq.

**COUNT V**

**TEMPORARY NUISANCE KRS 411.54 AND INJUCTIVE RELIEF**

40. Plaintiff re-alleges and incorporates all of the allegations contained in Paragraphs 1 – 39 as is fully set forth herein.

41. The contamination of the Property constitutes a temporary nuisance under KRS 411.540. The Defendant's use of the Property causes unreasonable and substantial annoyance to the occupant of Plaintiff's Property or unreasonably interferes with the use and enjoyment of such Property and thereby causes the rental value of the Plaintiff's Property to be reduced.

42. Notwithstanding the reasonable possibility of abating the nuisance Defendant ExxonMobil has not abated and is not abating the nuisance though it should have known at the time it or its predecessor in the title owned or operated the Property about the nuisance and the conditions contributing to it permitting contamination to spread to the soil. Plaintiff has no adequate limine at law to address the ongoing and progressive interference with its use and enjoyment of the Property.

43. Plaintiff seeks injunctive relief restraining and enjoining Defendant ExxonMobil from maintaining the nuisance described herein and requiring it to properly and completely take such action as necessary to abate that nuisance.

**COUNT VI**

**TORTIOUS INTERERENCE WITH RESPECT TO BUSINESS ADVANTAGE**

**AGAINST FIRST CAPITAL BANK OF KENTUCKY AND FCBKY HOLDING, LLC**

44. Plaintiff re-alleges and incorporates all of the allegations contained in Paragraphs 1 – 43 as is fully set forth herein.

45. Plaintiff had a valid business relationship or expectancy with ExxonMobil where ExxonMobil would enter into agreement with Plaintiff for Plaintiff to remediate the Site

and pay Plaintiff for the damages it suffered due to contamination, including cost of remediation which prevented the development of the Site. Defendants First Capital and FCBKY knew of the relationship or expectancy. First Capital and its subsidiary FCBKY intentionally interfered with the relationship between Plaintiff and ExxonMobil and the motive of the interference was improper since it entered into a secret deal with ExxonMobil thereby causing ExxonMobil not to deal with Plaintiff and the direct causal link between the tortious interference of the prospective business advantage and the actions of the Defendants result in the Plaintiff suffering damages in excess of $20,000,000.00.

WHEREFORE, Plaintiff demands judgement in its favor and against Defendants as follows:

(1) Judicial determination that ExxonMobil is liable for the cleanup cost to remediate the Property so that Plaintiff may redevelop the Property into housing.

(2) Injunctive Relief against Defendant ExxonMobil directing it to remediate the Site at its cost to make it suitable for Housing development.

(3) Compensatory Damages in an amount to be determined by Jury.

(4) Trial by jury on claims so triable.

(5) Compensatory Damages for Nuisance.

(6) Punitive Damages.

(7) A determination that if a sale of the Property occurs the purchaser will be responsible for all cleanup costs and for damages to Plaintiff.

(8) Damages against Defendant's FCBKY and First Capital for damages for interference with prospective business opportunity.

(9) For other such relief and damages the Court deems just and proper.

Respectfully submitted,

/s/ Laurence J. Zielke
Laurence J. Zielke
Zielke Law Firm, PLLC
Suite 1250 – Meidinger Tower
462 South Fourth Street
Louisville KY 40202
(502) 589-4600
lzielke@zielkefirm.com